IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES COLE, | ) | |
| | ) | Civil Action No. 04 - 99J |
| Plaintiff, | ) | |
| | ) | District Judge Kim R Gibson |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| RAYMOND SOBINA, Superintendent of | ) | |
| SCI Somerset; WILLIAM MAILMAN, | ) | |
| Unit Manager of General Population; | ) | |
| BRIAN WESTLEY, General Population | ) | |
| Unit Counselor; DAVID HUNTER, Unit | ) | |
| Manager of the Special Needs Unit at SCI | ) | |
| Somerset; and RITA WALKER, Unit | ) | |
| Counselor of Special Needs Unit at SCI | ) | |
| Somerset, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the Partial Motion to Dismiss the Amended Complaint (doc. no. 23) be granted with respect to Plaintiff's ADA and RA claims against Defendants in their individual capacities and also as to Plaintiff's claims against Defendant Sobina. It should denied as to Defendants' assertion that Plaintiff's claims against Defendants Hunter and Walker are barred by the two-year limitations period.   It is further recommended that the Motion to Dismiss filed by Defendants Mailman and Westley (doc. no. 26) be denied.

**II.     REPORT**

On March 11, 2004, while he incarcerated at the State Correctional Institution at Somerset James Cole (Plaintiff), filed a civil rights complaint against the following defendants: David Hunter, Unit Manager of the Special Needs Unit (SNU) at SCI-Somerset; Raymond

Sobina, Superintendent at SCI-Somerset; and Rita Walker, Unit Counselor of the SNU at Somerset in Civil Action No. 04-46J. On April 29, 2004, Plaintiff filed another civil rights complaint at Civil Action No. 04-99J against the following Defendants: Raymond Sobina; William Mailman, Unit Manager of General Population (GP) at SCI-Somerset; and Brian Wesley, Unit Counselor of GP at SCI-Somerset. On January 4, 2005, Plaintiff moved to consolidate these two cases (doc. no. 5). On March 9, 2005, the Honorable Kim R. Gibson granted Plaintiff's motion and consolidated the two cases at the above captioned civil action number. The Order required Plaintiff to file an amended complaint no later than April 15, 2005 (doc. no. 6).

Plaintiff filed an Amended Complaint on April 15, 2005 (doc. no. 8) wherein he named the following Defendants: the Commonwealth of Pennsylvania, Department of Corrections (DOC); the State Correctional Institution at Somerset; Raymond Sobina; William Mailman; Brian Wesley and Rita Walker. In his Amended Complaint Plaintiff alleges violations of the American with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA) the Rehabilitation Act, 29 U.S.C. § 794 (RA), and the Eighth Amendment of the United States Constitution.

A. <u>Plaintiff's Allegations</u>

Plaintiff claims that he has been mentally disabled since 1994 and that he was housed in the Special Needs Unit (SNU) at SCI-Somerset as a result of his mental illness. On March 21, 2002, Defendant Hunter assigned Plaintiff to "wheelchair pusher" detail. When Plaintiff told Hunter that he was medically restricted from performing that duty, Hunter told Plaintiff that it was part of the programming suggested by Defendant Walker. While performing this assigned detail, it was beyond his strength and became unduly painful. For several weeks

he requested to be re-assigned to a job that did not involve strenuous physical activity. On May 1, 2002, Plaintiff again requested a different job assignment but was told he was in prison and was required to follow orders. On May 7, 2002, Plaintiff told Defendant Walker that he could no longer endure the pain of pushing the wheelchair. He received a misconduct for failing to obey orders.

Thereafter, Plaintiff walked to the medical department, informed them as to what was happening and asked for pain medication. The physician telephoned Defendant Walker and informed her that Plaintiff was medically restricted to performing non-sedentary work. On May 13, 2002, Plaintiff received a disciplinary hearing where he was denied due process, witnesses and documentary evidence. He appealed to all levels but was denied and stripped of his staffing hearing and pre-release.

In August, Plaintiff was removed from the SNU and placed in General Population in J unit in a cell on the bottom tier. On December 6, 2002, Defendant Mailman allegedly disagreed about Plaintiff begging the Superintendent to evaluate what was being done with Plaintiff and his prison property by guards and general prison population on J Unit so he disregarded Plaintiff's bottom tier restriction and re-assigned him to the back of the unit on the top tier. From December to January, Plaintiff became physically aggravated by going up and down the stairs in order to access the lower level facilities. He claims that Defendants Mailman, Sobina and Westley knew of his medical restrictions but disregarded them and did nothing to prevent a serious injury.

On January 21, 2003, Plaintiff lost all feeling in his left side and fell down a flight of stairs. On January 27, 2003, Mailman and Westley retaliated against Plaintiff by issuing him

3

a false misconduct accusing him of staging the fall. After several months, Plaintiff proved that he was disabled and was given bottom tier and bottom bunk status. He was not, however, given appropriate housing or work assignments in compliance with his medical restrictions.

In November 2003, Plaintiff was denied admission back into the special needs program unit until he was physically assaulted by a J-Unit population inmate. Soon after, Plaintiff filed an informal request and was placed back into the SNU. On November 29, 2003, Plaintiff filed another informal request to the Unit Manager Defendant Hunter requesting access to prison work programs. No response was returned. When Plaintiff confronted Hunter, he told Plaintiff that as long as he was Unit Manager, Plaintiff would never be placed into the housing work program.

## B. Standard of Review

On May 21, 2007, Defendants Sobina, Mailman, Westley, Hunter and Walker filed a Partial Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) (doc. no. 23). On June 11, 2007, Defendants Mailman and Westley filed a Motion to Dismiss (doc. no. 26). Federal Rule of Civil Procedure 12(b)(6) provides the procedures for motions to dismiss. In this regard, when ruling on a motion to dismiss, the Court is required to read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). Notwithstanding, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___U.S. ___, 127 S.Ct. 1964-65. In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1955. It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the

defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

## C. Defendants' Partial Motion to Dismiss

1. ADA and RA

Defendants first argue that Plaintiff's claims under the ADA and RA should be dismissed against Defendants in their individual capacity. In this regard, Plaintiff's Amended Complaint raises claims under both the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA) and the Rehabilitation Act, 29 U.S.C. § 794 (RA).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. By its own language, the ADA applies only to "public entities" which includes "any state or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §§ 12131(1)(A) & (B). Individual defendants cannot be held liable under the ADA. Miller v. King, 384 F.3d 1248, 1277 (11th Cir. 2004); Yeskey v. Commonwealth, 76 F.Supp.2d 572, 575 (M.D.Pa.1999). Accordingly, Defendants' Partial Motion to Dismiss should be granted as to Plaintiff's claims under Title II of the ADA against the Defendants in their individual capacities.

Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

5

under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). Thus, the RA applies only to programs or activities receiving federal financial assistance and does not apply to individual defendants. *See* United States Dep't of Transp. v. Paralyzed Veterans of America, 477 U.S. 597, 605 (1986) ("Congress limited the scope of § 504 to those who actually "receive" federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds."). Plaintiff has not alleged that the individual defendants receive federal financial assistance. Therefore, Defendants' Partial Motion to Dismiss should be granted as to Plaintiff's RA claims against the defendants in their individual capacities. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.2002) ("Because the individual defendants do not receive federal aid, Emerson does not state a claim against them under the Rehabilitation Act."). Plaintiff should be able to proceed with his ADA and RA claims against Defendants DOC and SCI-Somerset.

2. Statute of Limitations

Defendants next assert that the two-year statute of limitations precludes Plaintiff's claims against Defendants Hunter and Walker because they were not named until Plaintiff filed his Amended Complaint on April 15, 2005. Defendants overlooked the fact that Judge Gibson consolidated this case with Civil Action No. 04-46J (doc. no. 6). In that action, filed on March 11, 2004, Plaintiff clearly named both Hunter and Walker. Plaintiff's allegations go back no farther than March 22, 2002. Such actions clearly are within the two-year limitations period as Defendants Hunter and Walker were named as Defendants in Civil Action No. 04-46J. Defendants clearly were on notice that these two actions had been consolidated notwithstanding the fact they never were served with the Complaint in 04-46J. Judge Gibson clearly ordered

6

Plaintiff to file an amended complaint. Plaintiff did so on April 15, 2005. Thus, there is no basis to dismiss Plaintiff's claims against Defendants Hunter and Walker and Defendants' Partial Motion to Dismiss should be denied in this regard.

      3.      <u>Lack of Personal Involvement by Defendant Sobina</u>

Next, Defendants argue that Plaintiff has failed to adequately allege personal involvement against Defendant Sobina, Superintendent at SCI-Somerset. To establish personal liability against a defendant in a section 1983 action, that defendant must have <u>personal</u> involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. <u>Rode</u>, 845 F.2d at 1207. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id*. *See also* <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to <u>prevent</u> violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official <u>knowingly permits</u> a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). In order to maintain a claim for supervisory liability, a plaintiff must show: 1) that

7

the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinates' violations. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Plaintiff's only allegation against Sobina is that Sobina knew that Plaintiff's medical restrictions posed a serious threat to his health and well being. "A civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Evancho v. Fisher, 423 F.3d at 353. As Defendants point out, Plaintiff's Amended Complaint fails to allege facts that, if proven, would show that Defendant Sobina had any personal involvement in the alleged violations of Plaintiff's constitutional rights. Defendant Sobina is not in charge of individual housing and cell assignment. That task is relegated to Unit and Housing Managers. It simply is unrealistic to assume that Defendant Sobina would have first hand knowledge of an individual inmate's medical restrictions.

Moreover, Defendant Sobina's involement in reviewing and/or affirming misconduct decisions grievances does not show personal involvement. The filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement. Rode, 845 F.2d at 1208. Moreover, mere concurrence in a prison administrative appeal process does not implicate a constitutional concern. Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (holding that administrative review of prison disciplinary hearings is not constitutionally guaranteed and, therefore, plaintiff's claims with respect to the Program Review Committee's decision did not rise to constitutional significance); Harmon v. Divirgilis, 2005 WL 387591 (E.D. Pa. Feb. 16, 2005) (there is no constitutional right to administrative review of prison

disciplinary proceedings); Croom v. Wagner, 2006 WL 2619794, *4 (E. D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, *2 (M. D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). As Plaintiff has failed to adequately allege personal involvement against Defendant Sobina, Defendants' Partial Motion to Dismiss should be granted in this regard.

### D. Motion to Dismiss by Defendants Mailman and Westley

Defendants Mailman and Westley move for dismissal based on the Plaintiff's alleged failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." The purpose of the grievance system is to insure that every inmate confined in a Bureau of Correction facility has an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought. DC-ADM 804 ¶ 1. The grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal

of initial review to the superintendent or regional director; and 3) final appeal to the central office chief hearing examiner. DC-ADM 804 ¶ VI. The administrative policy further provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member. DC-ADM 804 ¶ V.

In the instant action, Defendants assert that the Complaint should be dismissed because Plaintiff failed to have exhausted his administrative remedies in that he failed to have completed the three-step grievance process provided for in DC-ADM 804. This Court does not believe that Central Office's failure to have reviewed Plaintiff's grievances is a sufficient basis upon which to grant Defendants' Motion to Dismiss.

Specifically, the documents attached to Defendants' Motion reveal that Plaintiff's grievances were returned to him unprocessed on several occasions for various reasons including his inability to condense his grievance into a precise statement and his failure to attach supporting documenation. Plaintiff's situation is somewhat similar to the prisoner in Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). In Camp, an inmate filed a federal civil rights complaint alleging that prison guards used excessive and unnecessary force when they assaulted and stun gunned him while extracting him from his cell. In his complaint, the inmate asserted that he attempted to file a grievance after the incident but his complaint was not processed because he was on grievance restriction. In addition, the inmate claimed that many of the correctional officers had told him that none of his grievances would get to the Grievance Coordinator because they were complaining about the officers' co-workers. For those reasons, the inmate stated that he stopped trying to file a grievance because no one would help him. In

response to the defendants' motion to dismiss his complaint, the inmate argued, *inter alia*, that the circumstances that he had to deal with removed him from the statutory reach of the exhaustion requirement in 42 U.S.C. § 1997e. The court of appeals agreed with this position holding that "under Section 1997e(a) the prisoner need only exhaust such administrative remedies 'as are available.' " *Id.* Camp, 219 F.3d at 281. The Court alternatively found that, because the inmate's allegations had been fully examined on the merits by the ultimate administrative authority, it was not necessary that the inmate "jump through any further administrative hoops to get the same answer." *Id*.

In the case at bar, the Defendants assert that Plaintiff did not strictly comply with the three-step grievance procedure set forth in DC-ADM 804. However, as the circuit court's opinion in Camp makes clear, compliance with the mandatory exhaustion requirement set forth in 42 U.S.C. § 1997e is not dependent upon a prisoner seeking final review of a grievance under DC-ADM 804. That requirement only applies when: 1) the subject matter complained of is subject to review through the grievance procedure set forth in DC-ADM 804; and 2) use of the grievance system in DC-ADM 804 was "available" to the prisoner.

Construing the facts in the light most favorable to plaintiff, as this court is required to do in deciding a motion to dismiss, it is recommended that this court conclude that the Defendants' Motion to Dismiss should not be granted on the basis of their assertion that Plaintiff failed to have exhausted his available administrative remedies. The relevant documents suggest that Plaintiff made significant efforts to seek review of his claims through the DOC grievance procedure but that he was unable to condense his version of events into a coherent statement and was unable to provide adequate paperwork. Notwithstanding, his claims were

presented to all three levels. Perhaps most importantly, Plaintiff claims to have mental disabilities and was in fact housed in the SNU for a significant amount of time. Thus, his failure to comply with the rigid rules imposed in DOC grievance procedure DC-ADM 804 may be attributable to his mental disability. Accordingly, Defendants' Motion to Dismiss Plaintiff's claims against Defendants Westley and Hunter on the basis of Plaintiff's failure to have fully completed the exhaustion requirement in 42 U.S.C. § 1997e should be denied.

III.     **CONCLUSION**

It is respectfully recommended that the Partial Motion to Dismiss the Amended Complaint (doc. no. 23) be granted with respect to Plaintiff's ADA and RA claims against Defendants in their individual capacities and as to Plaintiff's claims against Defendant Sobina; it should denied as to Defendants' assertion that Plaintiff's claims against Defendants Hunter and Walker are barred by the two-year limitations period. It is further recommended that the Motion to Dismiss filed by Defendants Mailman and Westley (doc. no. 26) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. §636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                            Lisa Pupo Lenihan
                                            United States Magistrate Judge

Dated: November 13 , 2007

cc:     Honorable Kim R. Gibson

United States District Judge

James Cole
4445 Holden Street
Apartment 604
Philadelphia, PA 19104